The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
May 19, 2022

## 2022COA53

**No. 20CA2087, *People in Interest of E.V.* — Juvenile Court — Delinquency — Sentencing — Mandatory Period of Detention**

A division of the court of appeals considers whether the

mandatory sentencing provision found at section 19-2-911(2),

C.R.S. 2020, applies to a juvenile who is eighteen years old at the

time of sentencing.  The division concludes it does not because it

applies only to children.  Accordingly, the division reverses the

sentence and remands for resentencing.

Court of Appeals No. 20CA2087
Arapahoe County District Court No. 19JD500
Honorable Bonnie H. McLean, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of E.V.,

Juvenile-Appellant.

JUDGMENT AFFIRMED, SENTENCED REVERSED,
AND CASE REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE PAWAR
Furman and Kuhn, JJ., concur

Announced May 19, 2022

Philip J. Weiser, Attorney General, Katharine Gillespie, Assistant Attorney
General, Denver, Colorado, for Petitioner-Appellee

Megan A. Ring, Colorado State Public Defender, Mark Evans, Deputy State
Public Defender, Denver, Colorado, for Juvenile-Appellant

¶ 1    E.V., a juvenile, appeals his adjudication as a delinquent and sentence for possessing a handgun.  We affirm his conviction but conclude that because E.V. was not a child at the time of sentencing, he was not subject to the mandatory sentencing provisions of section 19-2-911(2), C.R.S. 2020.[1]  We therefore reverse his sentence and remand for resentencing.

## I.  Background

¶ 2    On the Fourth of July, police received a call that an assault was in progress at a park next to an apartment building, an area in which fights, assaults, and crime were common.  When two officers arrived at the park around 10 p.m., there was no assault in progress.  Witnesses told the officers that a person who was bloody had been taken into the apartment building.  The officers entered the building and walked the full length of the building in an interior hallway without seeing any sign of anyone involved in the assault.  At the exit door on the opposite side of the building from where they

[1] The juvenile justice code was reorganized in 2021.  Ch. 136, 2021 Colo. Sess. Laws 557-773.  The relevant provision now appears at section 19-2.5-1123(1), C.R.S. 2021.  We apply the version of the statute in effect when E.V. was sentenced, section 19-2-911(2), C.R.S. 2020.

had entered, they came upon E.V. in the doorway talking to another person. One of the officers recognized the other person from past negative interactions.

¶ 3 As the officers approached E.V. and the other person, the other person fled. One of the officers pursued him and the remaining officer attempted to talk to E.V., who had a drawstring bag on his shoulder. E.V. appeared out of breath and sweaty, refused to talk to the officer, and refused the officer's command to sit down. The officer then grabbed E.V. and forced him to sit down. As the officer was handcuffing E.V., the officer grabbed E.V.'s drawstring bag off his shoulder and felt what seemed to be a handgun inside. The officer then opened the bag and discovered a handgun.

¶ 4 The prosecution filed a petition in delinquency alleging that E.V. committed the offense of possession of a handgun by a juvenile. E.V. moved to suppress the discovery of the handgun, arguing that the officer lacked reasonable suspicion to detain him. The magistrate denied the motion, admitted the evidence of the handgun at the adjudication hearing, and adjudicated E.V. delinquent.

¶ 5    By the time of sentencing, E.V. had turned eighteen.  The magistrate determined that a mandatory sentencing provision required E.V. to serve at least five days of detention, which she sentenced him to serve in jail because he was eighteen.  The magistrate also stayed the execution of the jail sentence until the completion of this appeal.

¶ 6    E.V. petitioned the district court to review his adjudication and sentence, arguing that the magistrate erred by (1) failing to suppress the evidence of the handgun and (2) imposing a five-day jail sentence.  The district court disagreed with these arguments and affirmed.  E.V. now appeals to us, again challenging the suppression ruling and jail sentence.  We address each argument separately.

## II.  Suppression

¶ 7    E.V. argues that the magistrate erred by failing to suppress the evidence of the handgun because there was no reasonable suspicion that justified the investigatory stop.  A challenge to a suppression ruling presents a mixed question of fact and law. *People v. Webb*, 2014 CO 36, ¶ 9.  We defer to the lower court's factual findings if they are supported by the record and review the

court's legal conclusions de novo. *Id.* We conclude that suppression was not necessary here.

¶ 8    The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. In general, only searches and seizures supported by a warrant are reasonable and therefore compliant with the Fourth Amendment. *See People v. Aarness*, 150 P.3d 1271, 1277 (Colo. 2006). Warrantless searches and seizures are unreasonable and therefore prohibited unless they fall within a recognized exception to the warrant requirement. *Id.*

¶ 9    One such exception allows officers to conduct an investigatory stop if three conditions are met: "(1) there is reasonable suspicion that the individual has committed, or is about to commit, a crime; (2) the purpose of the detention is reasonable; and (3) the character of the detention is reasonable when considered in light of the purpose." *Outlaw v. People*, 17 P.3d 150, 156 (Colo. 2001). To determine whether officers had reasonable suspicion for a stop, we consider the totality of the circumstances, including the facts known to the officers at the time and any rational inferences that can be drawn from those facts. *See People v. Pacheco*, 182 P.3d 1180, 1183 (Colo. 2008).

¶ 10    The relevant facts, recounted above, were undisputed.  They included that the officers were dispatched to an in-progress assault involving multiple people in an area where fights and shootings involving juveniles were common.  Witnesses told the officers that a bloody person had gone into the apartment building.  In the building, the officers encountered E.V., sweaty and out of breath.  Under these circumstances, we conclude that it was reasonable for the officers to suspect that E.V. might have been sweaty and out of breath because he was involved in the assault that had just occurred.

¶ 11    E.V. argues otherwise, contending that this case is analogous to *People v. Greer*, 860 P.2d 528 (Colo. 1993).  We are unpersuaded.

¶ 12    In *Greer*, an officer was surveilling a parking lot that was well known for narcotics sales.  *Id.* at 529.  The officer saw three men approach the defendant and appear to have a conversation with her.  *Id.*  The officer saw no exchange take place and could not see the defendant's hands, but he did see one of the men put a single bill into his pocket as he turned away from the defendant to leave.  *Id.*  The supreme court held that, based on these facts, the officers lacked reasonable suspicion to detain the defendant.  *Id.* at 531-32.

¶ 13    This case is different.  In *Greer*, although the parking lot was known for narcotics sales, the officer did not have any information indicating that narcotics sales were happening that night.  In contrast, not only were the park and apartment building in this case known for assaults and shootings involving juveniles, but the officers were responding to an in-progress assault involving several individuals.  And from E.V.'s appearance and location — sweaty and out of breath and inside the apartment building — they reasonably suspected that he was involved in the assault.

¶ 14    Although the magistrate's factual findings may not have established probable cause to support a full custodial arrest, they were sufficient to create a reasonable suspicion that E.V. was involved in the assault, thereby justifying detaining E.V. for a brief, limited, and narrow investigation.  *See Pacheco*, 182 P.3d at 1183 ("An investigatory stop must be brief in duration, limited in scope, and narrow in purpose.") (citation omitted).  Because the officer had reasonable suspicion to briefly detain E.V., and E.V. does not challenge the scope of the detention, we disagree with E.V.'s argument challenging the suppression ruling.

### III.  Sentence

¶ 15    E.V. also argues that the magistrate erred by ruling that the mandatory minimum sentencing provision in section 19-2-911(2), C.R.S. 2020, required a five-day jail sentence.  We review de novo whether a magistrate properly interpreted the relevant statutes in imposing a sentence.  *See People in Interest of J.S.R.*, 2014 COA 98M, ¶¶ 12-13.

¶ 16    When interpreting statutes, our aim is to effectuate the legislature's intent by giving the words the legislature chose their plain and ordinary meanings.  *See People v. Argott*, 2021 COA 42, ¶ 11.  If that language is unambiguous, we apply the statute as written.  *Id.*  We also interpret individual provisions in the context of the broader statutory scheme, seeking to give consistent, harmonious, and sensible effect to all its parts.  *Id.* at ¶ 12.

¶ 17    Section 19-2-911(2) provides that "[i]n the case of a juvenile who has been adjudicated a juvenile delinquent for the commission of [possession of a handgun], the court shall sentence the juvenile to a minimum mandatory period of detention of not fewer than five days."  E.V. advances two alternative challenges to the five-day jail sentence imposed under section 19-2-911(2).  First, he argues that because he was eighteen at the time of sentencing, he was not a

juvenile within the meaning of the statute and the statute does not apply to him. Second, he argues that even if he was a juvenile within the meaning of the statute at the time of sentencing, the statute authorizes only a sentence to "detention," and because he was eighteen, he could not be sentenced to detention. We disagree with his first argument and agree with his second.

## A. E.V. Was a Juvenile at Sentencing

¶ 18    The Colorado Children's Code defines "juvenile" as "a child as defined in subsection (18) of this section." § 19-1-103(68), C.R.S. 2020. In turn, subsection (18) defines "child" as "a person under eighteen years of age." § 19-1-103(18). This might appear to limit the definition of "juvenile" to those under eighteen years of age. But subsection (8)(a) provides that "any person eighteen years of age or older who is under the continuing jurisdiction of the court, who is before the court for an alleged delinquent act committed prior to the person's eighteenth birthday, . . . shall be referred to as a juvenile." § 19-1-103(8)(a).

¶ 19    Reading these provisions harmoniously, as we must, we conclude that there are two categories of people to whom the term "juvenile" in section 19-2-911(2) applies: (1) persons under eighteen

8

years of age; and (2) persons over eighteen years of age who are under the continuing jurisdiction of the court for an alleged delinquent act committed before they turned eighteen. Because E.V. fits squarely into the second category, we conclude he was a juvenile as that term is used in section 19-2-911(2).

### B. E.V. Cannot be Sentenced to Detention

¶ 20 Both the magistrate and the district court held that E.V.'s jail sentence was authorized and required by section 19-2-911(2). E.V. contends that it was neither. We agree with E.V.

¶ 21 As mentioned above, section 19-2-911(2) authorizes only a mandatory period of "detention." Section 19-1-103(40) defines detention as "the temporary care of a child . . . ." And, as discussed above, a child is defined differently than a juvenile — a child is "a person under eighteen years of age." § 19-1-103(18). Consequently, detention is a sentence that can be imposed only on a person under eighteen years of age. Because E.V. was not under eighteen at sentencing, he was not a child, and he could not be sentenced to any form of detention under section 19-2-911(2). Therefore, he was not subject to a mandatory minimum sentence,

9

and his five-day jail sentence was not authorized by section 19-2-911(2).

¶ 22     The prosecution argues that this interpretation leads to absurd outcomes by creating different rules for juveniles who have turned eighteen by the time of sentencing and those who have not. We disagree that it is absurd to have different sentencing rules for children and individuals over eighteen years old — the entire juvenile justice system is predicated on a very similar distinction.

¶ 23     Because E.V.'s five-day jail sentence was not authorized by section 19-2-911(2), we must reverse it and remand the case for resentencing.

## IV.  Conclusion

¶ 24     The judgment is affirmed.  The district court's order affirming the magistrate's sentence is reversed, and the case is remanded to the district court with directions to remand to the magistrate for resentencing consistent with this opinion and the applicable sentencing provisions.

JUDGE FURMAN and JUDGE KUHN concur.